382 So.2d 1141 (1979)
Edward Albert SEIBOLD
v.
STATE.
5 Div. 473.
Court of Criminal Appeals of Alabama.
December 18, 1979.
Rehearing Denied February 5, 1980.
*1142 Richard D. Lane, Auburn, for appellant.
Charles A. Graddick, Atty. Gen., C. Lawson Little, Asst. Atty. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
By this appeal appellant seeks to review and reverse two judgments of the trial court, one rendered and entered on May 14, 1979, and the other on June 4, 1979. By the judgment of May 14, 1979, the court denied appellant's pro se petition for writ of error coram nobis filed on April 11, 1979; by the judgment of June 4, 1979, the court denied appellant's second pro se petition for writ of error coram nobis filed May 23, 1979, an accompanying pro se petition for rehearing of the first petition for writ of error coram nobis and appellant's motion for the trial judge to recuse himself. For this appeal an attorney was appointed to represent appellant, and he has filed a comprehensive brief.
By the two petitions for writ of error coram nobis, petitioner sought to vitiate his conviction and sentence to life imprisonment for murder in the first degree in each of three cases, and his conviction of assault with intent to murder and a sentence to twenty years imprisonment, all of which occurred after entry of a plea of guilty by defendant and the hearing thereon, at which he was represented by an employed attorney and an attorney appointed by the court. From the judgments of conviction and sentence, defendant appealed and was represented on appeal by an attorney appointed by the court. The judgment of conviction and sentence in each case was affirmed in Seibold v. State, 50 Ala.App. 613, 281 So.2d 667 (1973), cert. denied 291 Ala. 797, 281 So.2d 668 (1973).
The judgments from which the appeal in these proceedings was taken were rendered by Honorable L. J. Tyner, former Presiding Judge of the Seventh Judicial Circuit, now a retired Circuit Judge of said circuit, to whom the case was assigned by the present Presiding Circuit Judge, by virtue of authority vested in him by order of the Chief Justice of the Supreme Court of Alabama on January 23, 1978. Judge Tyner, while a regular circuit judge, presided and rendered the judgments of conviction and sentence that were affirmed in Seibold v. State, supra. He also presided and rendered judgments of conviction and sentence in two cases in which appellant herein had been found guilty by a jury of murder in the first degree, wherein his punishment in each case was fixed at death. In one of the cases, Seibold v. State, 287 Ala. 549, 253 *1143 So.2d 302 (1970), the judgment was affirmed, but in a habeas corpus proceeding the judgment was vacated in Seibold v. Daniels, 337 F.Supp. 210 (M.D.Ala.E.D. 1972). Judge Tyner presided also on the trial of this appellant which resulted in a jury verdict finding him guilty of murder in the first degree of another victim and fixing his punishment at death, and a judgment accordingly, which judgment was reversed and the cause remanded in Seibold v. State, 287 Ala. 693, 255 So.2d 53 (1971).
An attorney was appointed by the trial court to represent appellant on this appeal. From the time of the appeal and the appointment of the attorney until the first part of September 1979, there was a proliferation in this Court of pro se motions and other pro se documents by appellant, including correspondence between him and his appointed attorney, who filed a brief on behalf of appellant on August 29, 1979. In a part of the documents filed by appellant pro se, appellant expressed dissatisfaction with the method by which his appointed counsel was handling the matter on appeal. His complaints, requests and motions for relief are apparently supplanted by his pro se motion of September 4, 1979, entitled "MOTION TO BE ALLOWED TO DISCHARGE ATTORNEY-OF-RECORD, OR, IN THE ALTERNATIVE, MOTION THAT BRIEF AND ARGUMENT OF ATTORNEY-OF-RECORD BE STRICKEN FROM THE RECORD." In the meantime, on August 21, 1979, he had filed a pro se brief.
In compliance with the objective of appellant's said motion of September 4, 1979, although the writer has read the brief of appellant's counsel, said brief will, insofar as such action is possible, be disregarded.
We first consider that part of the judgment of June 4, 1979, in which the court denied appellant's motion that the trial judge recuse himself. Appellant's pro se brief does not bring forward the contentions set forth in his motion for a recusal. There is no relation between the point and any of the seven propositions of law he relies upon in his brief for a reversal. The motion to recuse consists of a congeries of vague imputations of partiality, in which no greater specificity is found than the allegation that petitioner "can produce witnesses who will swear under oath that they believe the trial judge . . . was biased against the petitioner and lacking in impartiality." No reference is made in the motion to recuse to any conduct of the judge other than that which transpired in open court relative to one or more of the cases in which he presided. The motion to recuse does not show any merit on its face, and it was properly denied. Disqualifying prejudice or bias of a judge toward a party litigant must be of a personal nature. Johnson v. State, Ala.Cr.App., 335 So.2d 663 (1976); Slinker v. State, Ala.Cr.App., 344 So.2d 1264 (1977); Pannell v. State, Ala.Cr.App., 356 So.2d 219, 221 (1978); Canon 3, A(5), Alabama Canons of Judicial Ethics.
Propositions of Law IV, V, VI and VII of appellant's pro se brief relate to his claimed insanity, or mental incompetence to stand trial, and his alleged resultant inability to enter a guilty plea and be sentenced in each of the four cases. In passing upon such question, the trial court had before it, and apparently fully considered, the entire record and the court reporter's transcript of the entire proceedings that resulted in the judgments of conviction and sentence from which the consolidated appeal was taken in the last reported Seibold case, 50 Ala.App. 613, 281 So.2d 667 (1973), cert. denied, 291 Ala. 797, 281 So.2d 668 (1973). Post-conviction judicial relief is not to be extended to such an extreme as to set aside that which has been fully considered and determined in an adversary proceeding at least twice by the trial court, on original submission and on rehearing by the Court of Criminal Appeals, and on petition for certiorari, by the Supreme Court of Alabama. And we may add that it has been correctly determined, in our view, after consideration of the record and the transcript of the proceedings in the four cases in which defendant was convicted and sentenced on his plea of guilty in each case.
*1144 Propositions of Law I, II, & III in appellant's pro se brief raise a point not raised in the basic proceedings in which appellant was found guilty and sentenced, and was not raised in appellant's first petition for writ of error coram nobis in the instant proceeding. By such propositions of law and arguments made in the pro se brief in support of such propositions, appellant contends that the trial court was in error in the three cases of murder in the first degree, in determining, without the intervention of a jury, that defendant was guilty of murder in the first degree and in fixing his punishment at life imprisonment. He supports his contention by references to the provisions of the Code applicable at the time of said convictions and sentences, Code of Alabama, Recomp.1958, Tit. 14, §§ 317, 318, and Tit. 15, § 277, as follows:
"When the jury find the defendant guilty under an indictment for murder, they must ascertain by their verdict whether it is murder in the first or second degree; but if the defendant on arraignment confesses his guilt, the court must proceed to determine the degree of the crime, by the verdict of a jury, upon examination of the testimony and pass sentence accordingly." Tit. 14, § 317
"Any person who is guilty of murder in the first degree, shall, on conviction, suffer death, or imprisonment in the penitentiary for life, at the discretion of the jury; and any person who is guilty of murder in the second degree shall, on conviction, be imprisoned in the penitentiary for not less than ten years, at the discretion of the jury." Tit. 14, § 318
"If a defendant upon arraignment or prior to trial pleads guilty, the court, without the intervention of a jury, shall determine the degree of the offense and fix the punishment therefor the same as a jury might fix or impose it if the case was being tried by a jury, unless in the discretion of the trial judge a jury should be empanelled to determine the degree of the offense or to fix the punishment therefor or unless the defendant at the time of entering such plea demands in writing a jury. The court shall not in any event, however, impose capital punishment without the intervention of a jury. Whenever in the discretion of the trial judge a jury should be empanelled or a jury is demanded, in the manner and at the time prescribed above, no special venire need be drawn, but the court must cause the punishment to be determined by a jury, except where the punishment is required by law to be fixed by the court. The court may in all cases in which a plea of guilty is entered, cause witnesses to be examined to ascertain the character of the offense. Nothing herein contained shall be construed as authorizing an accused who has entered a plea of guilty to demand a jury to determine any issue or to fix punishment in regard to any offense unless the right to have a jury determine such issue or fix the punishment in regard to the offense with which he is charged is granted under some other applicable provision of law." Tit. 15, § 277, as amended by Acts 1969, No. 1061, p. 1981.
Also pertinent to the question is Code of Alabama, Recomp.1958, Tit. 30, § 70:
"At any time before a special venire has been drawn for the trial of any capital case, if the defendant enters a plea of guilty or in writing waives the right of a special venire, such plea of guilty or such waiver of special venire shall be entered of record, and, in either event, no special jury or venire shall be necessary for the trial of such case; but the trial of the cause shall be had and the question of the degree of guilt must be ascertained and the punishment fixed by a jury to be selected from the panel of regular petit jurors organized by the court during the week such case is set for trial, in the same manner as juries are organized for the trial of felonies not capital. And the state and the defendant shall be allowed the same number of peremptory challenges as they are respectively allowed in the trial of felonies not capital."
That the fertile mind of appellant or his counselor, whoever he is, has raised an important question, i. e., whether the determination *1145 by the judge, without the intervention of a jury, that one, on his plea of guilty, is guilty of murder in the first degree and that his punishment should be fixed at imprisonment for life, was proper practice as to capital cases generally, prior to the effective date of the Death Penalty and Life Imprisonment Without Parole Act of Alabama (Acts 1975, No. 213), is emphasized by the attention given to the question in Prothro v. State, Ala.Cr.App., 370 So.2d 740. Appellant's position in this particular respect is largely in accord with the majority opinion in Prothro, which was seriously questioned in the specially concurring opinion therein.
In adhering to what was stated in the majority opinion in Prothro on the subject, we observe that appellant is correct in his insistence that, in accordance with the law as it appeared at the time appellant was convicted and sentenced to life imprisonment in the three cases for murder in the first degree, a jury should have been utilized to determine whether he was guilty of murder in the first degree and fix his punishment, even though he had entered a plea of guilty. Irrespective of this conclusion, however, we are of the opinion that the fact that no jury was so utilized does not, in correct logic or in applied justice, work a reversal of the judgments of the trial court in the instant proceedings.
The judgments in the proceedings now being reviewed were rendered on June 12, 1972. Ten days thereafter, June 22, 1972, the Supreme Court rendered its opinion in Furman v. Georgia, and companion cases, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, which necessitated a reversal by the courts of Alabama of its preceding consistent course in endeavoring to uphold the will of the Legislature in capital cases where discretion was vested in the jury to determine whether the punishment should be that of death or imprisonment. Ten days before the opinion in Furman, neither the trial court nor the attorneys in the Seibold cases had any reasonable way of knowing when or what the opinion in Furman would be. It is obvious that before Furman was announced neither the trial court nor any of the attorneys would have seriously questioned the likelihood that if defendant continued to plead not guilty in the three, (then apparently capital) cases he would have been ultimately executed. No one, including defendant could be blamed for that view in the light of what the law then appeared to be. There was clearly no failure on the part of defendant's counsel to measure up to the utmost fidelity and intelligence in cooperating with him in his efforts to dispose of the cases against him by rendition of the final judgments he then desired, from which the appeals were taken, and as to which appellant belatedly (six years thereafter) complains anew.
Although the apparent statutory law governing capital offenses in Alabama was not followed to the extent of utilization of a jury in the determination of appellant's guilt and of the punishment to be imposed, it can now be clearly seen, by the rear view light of Furman, that such was not the law at the time of the judgments on June 12, 1972. The effect of Furman has been that such then apparently existing capital punishment laws of Alabama did not actually exist, for Furman was not merely prospective in application, it was retrospective as to all capital crimes, like Furman and the two companion cases, and like the three appellant committed. As to all of them, the crimes and the cases, the opinion in Furman removed their capital nature except as to those in which the sentence of death had been executed. As we look retrospectively upon the crimes involved in the proceedings under review and follow, as we must, what the Supreme Court held in Furman v. Georgia, the crimes were not capital crimes. Therefore, the law that appeared to apply as to the necessity for a jury determination did not actually apply. It follows necessarily that as none of the offenses involved was a capital offense, the provisions of statutory law applying to capital crimes were not violated by the court's proceeding as it did without a jury.
We find no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
*1146 The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
HARRIS, TYSON, DeCARLO and BOOKOUT, JJ., concur.
BOWEN, J., concurs specially.
BOWEN, Judge concurring specially.
This case brings to mind the words of Chief Justice J. Ed Livingston in Cooper v. Wiman, 273 Ala. 699, 700-701, 145 So.2d 216, 217 (1962).
"(T)he criminal of today makes a mockery of our judicial system. Finality of a criminal judgment and sentence today is as outmoded as the Model-T. State and federal courts are now being besieged by prisoners who want a rehearing or a new trial, or any type of hearing which will set them free. Guilt or innocence is no longer the paramount question to be resolved. Indeed, in most of the applications for extraordinary writs by these incarcerated prisoners, they make no claim of innocence, and the allegations of error which they set forth know no bounds except those of their own imagination. Nowhere in this proceeding does appellant assert, or even intimate, that he is not guilty of murder, to which he pleaded guilty."

* * * * * *
"The petitioners take great comfort in the fact that no matter how frivolous their allegations or how utterly deficient their pleadings may be, the state must respond to these ofttimes unintelligible pleadings letters or memorandums, and/or proceed to costly and time-consuming hearings. The petitioners have nothing to lose, for they know that the very least they can obtain is a day away from their prison surroundings."